The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document was signed electronically on August 27, 2019, which may be different from its entry on the record.

IT IS SO ORDERED.

Dated: August 27, 2019



ARTHUR I. HARRIS
UNITED STATES BANKRUPTCY JUDGE

# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| MELLISE N. PTACEK, | ) | Case No. 16-10279 |
|     Debtor. | ) | |
| | ) | Judge Arthur I. Harris |
| | ) | |
| RICHARD A. BAUMGART, | ) | |
| TRUSTEE, | ) | Adversary Proceeding |
|     Plaintiff. | ) | No. 17-1105 |
| | ) | |
| v. | ) | |
| | ) | |
| JAMES PTACEK, 8641 EAST SAN | ) | |
| ARDO DRIVE LLC, & MELLISE N. | ) | |
| PTACEK, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OF OPINION[1]

In this adversary proceeding, the Chapter 7 trustee seeks to recover property

for the benefit of the debtor's estate that the trustee asserts the debtor fraudulently

---

[1] This Opinion is not intended for official publication.

transferred to her ex-husband. The trustee also seeks to recover money that the debtor's ex-husband allegedly still owes the debtor from their separation agreement and divorce. Following a trial, the Court finds that the trustee has failed to establish any claims by a preponderance of the evidence other than a claim for money due the debtor under a $36,000 promissory note. Accordingly, the Court enters judgment in favor of the trustee and against the debtor's ex-husband in the amount of $49,048.77 and denies all other claims in the trustee's amended complaint.

## JURISDICTION

The Court has jurisdiction over this action under 28 U.S.C. §§ 157(b)(2)(E) and (H) and 1334 and Local General Order No. 2012-7, entered by the United States District Court for the Northern District of Ohio. In addition, all of the parties except the debtor, Mellise N. Ptacek, have expressly consented to the bankruptcy court entering a final judgment. *See* Amended Complaint at ¶ 1 (Docket No. 4); Pretrial Minutes (Oct. 19, 2017) (Docket No. 9); *see also Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1948–49 (2015) (Article III permits bankruptcy judges to decide *Stern* claims with the parties' knowing and voluntary consent).

## PROCEDURAL HISTORY

On January 22, 2016, Mellise N. Ptacek ("debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code (Case No. 16-10279). The debtor appeared for examination at her initial meeting of creditors on February 29, 2016, and at an adjourned meeting of creditors on March 14, 2016. The Chapter 7 trustee, Richard Baumgart ("trustee"), continued the examination of the debtor on several more occasions, but the debtor failed to appear and failed to provide information requested by the trustee (Adv. No. 16-1080, Docket No. 1).

On June 8, 2016, the trustee filed an adversary proceeding seeking a denial of the debtor's Chapter 7 discharge due to the debtor's repeated failure to appear at adjourned debtor's examinations and to provide requested information (Adv. No. 16-1080). On June 24, 2016, the debtor's attorney filed a motion to withdraw from the debtor's bankruptcy case, which the Court granted on July 27, 2016. After the debtor failed to appear or otherwise respond to the trustee's complaint in Adv. No. 16-1080, the Court granted the trustee's motion for default judgment on August 24, 2016, thereby denying the debtor a Chapter 7 discharge.

On August 17, 2017, the Chapter 7 trustee filed this adversary proceeding against James Ptacek ("Mr. Ptacek"), 8641 East San Ardo Drive LLC ("the LLC"), and the debtor. On September 7, 2017, the trustee filed an amended complaint.

3

*The Amended Complaint*

The amended complaint includes four claims for relief.

In Count I, the trustee alleges that on or about September 15, 2015, the debtor fraudulently transferred to her ex-husband, Mr. Ptacek, her one-half interest in certain real property known as 8641 San Ardo Drive, Scottsdale, Arizona ("the Arizona property"). The trustee seeks to set aside the alleged fraudulent transfer under both Section 548 of the Bankruptcy Code and Sections 1336.01 *et seq.* of the Ohio Revised Code, made applicable under Section 544(b) of the Bankruptcy Code.

In Count II, the trustee alleges that Mr. Ptacek further transferred the Arizona property from himself to the LLC after the debtor's bankruptcy case was filed in order to hinder, delay, or defraud the trustee from reaching this property. The trustee seeks to set aside the alleged fraudulent transfer under both Section 548 of the Bankruptcy Code and Sections 1336.01 *et seq.* of the Ohio Revised Code, made applicable under Section 544(b) of the Bankruptcy Code. The trustee also seeks to recover the Arizona property from Mr. Ptacek and the LLC for the benefit of the estate under Section 550 of the Bankruptcy Code.

4

In Count III, the trustee seeks to recover the value of the Arizona property from Mr. Ptacek and the LLC for the benefit of the estate under Section 550 of the Bankruptcy Code.

In Count IV, the trustee asserts that, at the time the debtor filed for bankruptcy, Mr. Ptacek owed the debtor

- $36,000, plus interest and costs, based on a promissory note;

- $150,000 related to a property settlement that the debtor fraudulently transferred to Mr. Ptacek; and

- the sum of $2,040 per month for 36 months for unpaid spousal support.

*Pretrial Proceedings and Discovery*

On September 12, 2017, Mr. Ptacek and the LLC answered the amended complaint, but the debtor failed to respond. Despite the debtor's failure to appear or respond to the amended complaint, the trustee has never sought entry of default or moved for a default judgment against the debtor.

The Court held status conferences on October 17, 2017, December 5, 2017, and January 9, 2017. By agreement, the next status conference was adjourned several times to July 24, 2018. On July 30, 2018, the Court set a discovery deadline of October 1, 2018, and a trial date of December 14, 2018. On October 12, 2018, the Court granted the trustee's unopposed motion to extend the discovery deadline to November 1, 2018.

5

On October 31, 2018, the trustee filed a motion for the debtor to show cause why she should not be held in contempt for failing to appear for deposition on two occasions despite receiving proper notice (Docket No. 23). On November 7, 2018, the Court postponed the December 14, 2018, trial and trial-related deadlines in light of the trustee's motion. On December 18, 2018, the Court held a hearing on the trustee's motion, during which the trustee asserted that both the debtor and Mr. Ptacek had deliberately obstructed the trustee's efforts to conduct discovery. Neither the debtor nor Mr. Ptacek appeared at the hearing.

On December 19, 2018, the Court ordered the debtor and Mr. Ptacek to appear and show cause why they should not be sanctioned for their efforts to obstruct discovery (Docket No. 28). On January 8, 2019, the Court held a hearing on its order to show cause. Mr. Ptacek appeared and testified, but the debtor failed to appear. The Court concluded its order to show cause against Mr. Ptacek and indicated it would consider a request by the trustee for service of a subpoena upon the debtor by a deputy United States marshal, if such a request was made by February 28, 2019. The trustee made no such request by February 28, 2019.

The Court set a status conference for March 26, 2019, but that status conference was rescheduled for April 9, 2019, at the request of Mr. Ptacek's attorney and with the consent of the trustee. On April 11, 2019, the Court issued a

6

revised scheduling order, establishing a dispositive motion deadline of April 23, 2019, and a trial date of June 24, 2019.

*Summary Judgment*

On April 18, 2019, Mr. Ptacek and the LLC moved for summary judgment (Docket No. 40). On May 24, 2019, the Court denied their motion for summary judgment, holding that genuine disputes of material fact existed as to each of the trustee's claims (Docket No. 46).

> Defendants' motion for summary judgment is denied. While defendants make a good argument that the trustee will not be able to establish elements of his claims at trial, a genuine dispute of material fact exists as to each of the trustee's claims, especially construing the evidence in a light most favorable to the trustee. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245 (1986) (trial court may deny summary judgment in a case "where there is reason to believe that the better course would be to proceed to a full trial"). The June 25, 2019, trial date and related deadlines remain in effect.

*Trial, Including Debtor's Failure to Appear*

A trial was held on June 24 and 25, 2019. The Court heard testimony from:

- Bohdan Holyk, the process server who had attempted service on the debtor for deposition by the trustee;

- Michael Lewis, a process server who successfully served a trial subpoena on the debtor;

- Shawnee Delaney, who witnessed an altercation involving Mr. Ptacek and the debtor's boyfriend on June 4, 2014;

- Robert Somogyi, the debtor's former domestic relations attorney; and

7

- Mr. Ptacek.

The debtor failed to appear at the trial, despite being properly served. The trustee moved for an order that the debtor be taken into custody by a deputy United States marshal and be required to testify in this proceeding. The trustee also moved to have the trial stayed until the debtor could be apprehended and brought to the courthouse to testify at some future date. The Court permitted the trustee to make a proffer of what he believed the debtor would testify were the debtor apprehended and brought to the courthouse at some future date, but the Court refused to postpone the trial or order that the debtor be apprehended and brought to the courthouse to testify. The Court told the trustee that he was free to submit a criminal referral of Mr. Ptacek and/or the debtor to the United States Attorney under 18 U.S.C. § 3057.

Subject to redaction under Bankruptcy Rule 9037, the Court admitted exhibits 1–12 of the trustee without objection, while sustaining Mr. Ptacek's objections to exhibits 13, 15, 17, 18, and 19. The Court also admitted exhibits A–J, L–N, R, and T of Mr. Ptacek without objection, while sustaining the trustee's objection to exhibit K and overruling the trustee's objection to exhibit O. This memorandum constitutes the Court's findings of fact and conclusions of law as required by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

8

# FINDINGS OF FACT

The findings of fact contained in this memorandum of opinion reflect the Court's weighing of the evidence, including the credibility of each witness. In doing so, "the court considered the witnesses' demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re Parrish*, 326 B.R. 708, 711 (Bankr. N.D. Ohio 2005). Even if not specifically mentioned in this decision, the Court considered the testimony of all the trial witnesses and all the exhibits admitted into evidence. Unless otherwise indicated, the following facts were established at trial by a preponderance of the evidence or were stipulated by the parties.

## *Joint Stipulations*

The parties stipulated to the following 17 stipulations (Docket No. 52). For clarity and consistency, the Court will refer to Mellise Ptacek as "the debtor" and James Ptacek as "Mr. Ptacek" even though the stipulations as filed use different descriptors:

1. Mellise Ptacek ("the debtor") is the debtor in this chapter 7 bankruptcy case which was commenced by the filing of a voluntary chapter 7 petition on January 22, 2016. Plaintiff is the trustee in that case.

9

2. The debtor initially appeared twice for examination but was denied a discharge in this case for failure to appear at several continued examinations.

3. As part of the divorce described below, Mr. Ptacek was to pay spousal support of $2,040 per month for 36 months, child support of $700 per month, a property settlement of $150,000 to the debtor, and was to list for sale the real property located at 8641 San Ardo Drive, Scottsdale, AZ (the "Arizona Property"), and split the net proceeds after compensating Mr. Ptacek for carrying costs.

4. On August 24, 2005, the debtor and Mr. Ptacek, as joint tenants (and while married), purchased the property located at 8641 E. San Ardo, Scottsdale, Arizona 85869 for $415,000. A warranty deed was filed with the Maricopa County Recorder as Recording No. 20051221529.

5. On August 24, 2005, a deed of trust (i.e. mortgage) was recorded with the Maricopa County Recorder as Recording No. 20051221530, such document granting Mortgage Electronic Registration Systems, Inc. a security interest in the Arizona property for the purchase money loan made to Mr. Ptacek and the debtor. The amount of the deed of trust was $347,200.

6. On September 13, 2006, the debtor instituted a divorce action against Mr. Ptacek, the same filed in the Cuyahoga County Domestic Relations Court and assigned Case No. DR 06-312442.

7. On May 15, 2008, the debtor and Mr. Ptacek executed a Separation Agreement. The Separation Agreement, required that the property to be listed for sale, sold and the proceeds divided, as follows:

> [t]he real estate located at 8641 E. San Ardo, Scottsdale, Arizona 85869 shall be listed for sale and sold. The Husband shall be solely responsible for all arrangements with the real estate agent and all negotiations associated

10

with the sale of said property. Until such time as the real estate is sold, the Husband shall have the sole obligation to make the payments associated with the primary mortgage, taxes, insurance, utilities and all other repairs associated with said real estate. Dollar-for-dollar any money which the husband pays toward these obligations shall be equally divided between the parties by deducting the total amount of said payments from the total net proceeds derived at the time of closing of the sale. Net proceeds is defined as the net amount of money remaining after payment of the primary mortgage and any other liens associated with the property, real estate commissions and other customary costs associated with the sale of real estate. Therefore, the net proceeds shall be divided as follows:

First, the Husband shall receive reimbursement for any expenses he has paid for the Arizona property after March 13, 2008. Second, any net proceeds which remain thereafter shall be divided equally between the Husband and the Wife. Any capital gain taxes associated with the sale of this real estate shall be assumed in the same proportion as the division of the net proceeds between the Husband and the Wife. Wife's liability shall be limited to her share of the net proceeds.

8. The debtor and Mr. Ptacek were divorced on June 19, 2008.

9. On September 15, 2015, the debtor and Mr. Ptacek transferred the Arizona property solely to Mr. Ptacek, and a deed was recorded with the Maricopa County Recorder as Recording No. 20150691356.

10. On October 7, 2015, the debtor, Mr. Ptacek, and Mr. Ptacek's domestic relations attorney executed a Stipulated Judgment Entry that was filed in the Domestic Relations Court, which stated in pertinent part as follows:

11

The Court further finds that the parties mutually agreed to delay the sale of the Arizona Property and, as a result, the Arizona Property has not been sold.

The Court further finds that Defendant has satisfied his obligation of paying all of the expenses for the Arizona Property, as provided in the Judgment Entry of Divorce, since the date of the divorce.

The Court further finds that if the Arizona Property was sold pursuant to the terms of the Judgment Entry of Divorce, and Defendant received "dollar-for-dollar" reimbursement for the payment of expenses for the Arizona Property, then there would be zero ($0.00) net proceeds to be divided between Plaintiff and Defendant.

The Court further finds that as a result of the foregoing circumstances, the parties have agreed to modify the Separation Agreement, pursuant to O.R.C. §3105.171[], all as more fully set forth in this Agreement.

Upon due consideration thereof, the Court finds that the parties' Agreement is fair, just, and equitable.

IT IS THEREFORE ORDERED ADJUDGED AND DECREED that Section II(l) of the Separation Agreement, as it relates to the real estate located at 8641 E. San Ardo, Scottsdale, Arizona 85869 ("Arizona Property") shall be modified as follows:

Defendant shall retain the Arizona Property as his sole and separate property, free and clear of any claim of Plaintiff. Plaintiff shall execute a Quit Claim Deed conveying all of her interest in the Arizona Property no later than seven (7) days from the journalization of this Agreed Judgment Entry.

12

Defendant shall assume sole responsibility for the payment of all expenses associated with the Arizona Property including, but not limited to, the mortgage, real estate [taxes], insurance, utilities, and maintenance/repairs. Defendant shall indemnify and hold Plaintiff harmless thereon.

Both parties warrant that neither has caused any liens or encumbrances (other than the mortgage) to be placed on the title of said property. In the event that such liens or encumbrances are discovered at the time. of refinance or at any time in the future, it shall be the sole responsibility of the party who allowed the lien/encumbrance to attach to pay or otherwise reduce the lien/encumbrance.

This Stipulated Judgment Entry was signed by Cuyahoga County Domestic Relations Court Judge Francine Goldberg.

11. On December 29, 2015, a new deed of trust was recorded with the Maricopa County Recorder as Recording No. 20150914176, the amount of the mortgage being stated as $274,000.

12. On September 22, 2016, Mr. Ptacek transferred the Arizona property to 8641 East San Ardo Drive LLC, an Ohio limited liability company whose sole member is *The East San Ardo Drive Irrevocable Trust dated June 24, 2016*, a trust in which Mr. Ptacek was the transferor or grantor.

13. During August of 2014, there was an altercation between Mr. Ptacek, David Szabo, and the debtor. The cause and circumstances surrounding that matter are in dispute.

14. Also during August of 2014, the debtor filed several post-divorce motions in the divorce action seeking among other relief, recovery of $36,000 on a promissory note dated November 16, 2009, a $150,000 property settlement and one-half of the net proceeds from the Arizona property. Copies of those pleadings [are attached].

13

15. Mr. Ptacek filed a Motion to Dismiss the Debtor's August 2014 motions. On February 23, 2015, a Judgment Entry was filed with the Domestic Relations Court indicating:

> IT IS ORDERED THAT PLTF'S MOTION TO [SET] ASIDE [JUDGMENT] ENTRY OF DIVORCE #366694, FILED 08-08-14 IS DENIED. IT IS FURTHER ORDERED THAT PLTF'S MOTION FOR RELIEF FROM JUDGMENT #366695, FILED ON 08-08-2014 IS DENIED. IT IS FURTHER ORDERED THAT DEFT'S MOTION TO DISMISS AND BRIEF IN OPPOSITION TO PLTF'S MOTION TO SET ASIDE JUDGMENT ENTRY OF DIVORCE; [OR] IN THE ALTERNATIVE MOTION FOR RELIEF FROM JUDGMENT, MOTION #369496, FILED 10-24-14 IS GRANTED.

16. The transcripts of the two 341 examinations of the debtor and the deposition transcript filed in this case of James Ptacek, David Ptacek and Anthony Rinaldi can be considered and be admitted without objection as to authenticity.

17. All remaining facts are in dispute.

*Background*

Although the May 15, 2008, separation agreement indicated that the debtor and Mr. Ptacek had "ceased to live together as husband and wife," the testimony at trial indicated that the debtor often split time between living with Mr. Ptacek and living with her mother over the next several years. In accordance with the separation agreement, Mr. Ptacek entered into an agreement with a real estate broker to sell or rent the Arizona property on September 30, 2009. The agreement

14

remained in effect until September 30, 2010.  On February 23, 2010, the debtor

and Mr. Ptacek executed a joint tenancy deed transferring the rights of the Arizona

property from them jointly as husband and wife to the two of them jointly as single

individuals.  On February 26, 2010, a new deed of trust was executed for the

Arizona property in the amount of $331,900.

To satisfy his spousal support obligation as required by the separation

agreement, Mr. Ptacek registered a payment account with the Cuyahoga County

Child Support Enforcement Agency ("CSEA").  According to the transaction

history from the CSEA provided at trial, Mr. Ptacek made 18 payments of $2,040

between June 30, 2008, and December 7, 2009, which constituted half of his

spousal support obligation.  The transaction history also lists a credit of $3,594.39.

While Mr. Ptacek indicated that this credit represented additional spousal support

payments, he provided no documentation in support of that assertion.

On November 16, 2009, an agreed judgment entry was entered with the

domestic relations court, which stated that Mr. Ptacek previously "agreed to prepay

the Spousal Support Obligation . . . and thereby satisf[ied] his obligation" under

the separation agreement and Final Decree for Divorce.  Accordingly, the debtor

acknowledged "receipt of all spousal support that is owed to her."  However, on

that same day, Mr. Ptacek executed a promissory note.  The terms of the note

15

stated that Mr. Ptacek was to pay the debtor 18 equal monthly payments of $2,000 for a total principal balance of $36,000, with the first payment due on December 1, 2009. The note also indicated that "if each payment is not paid on time, the remaining balance will be subject to interest at 18 per cent per annum, but not to exceed the maximum amount of interest permitted by the Laws of the State of Ohio." Finally, the note included a clause stating:

> If [Mr. Ptacek] defaults in the payment of this Note or in the performance of any obligation, and the default continues after [the debtor] gives [Mr. Ptacek] notice of the default and the time within which it must be cured, as may be required by law or written agreement, then [the debtor] may declare the unpaid principal balance and interest on this Note immediately due.

On December 17, 2009, Mr. Ptacek individually executed a mortgage on his home in Strongsville, Ohio, in the amount of $625,000.

On January 14, 2011, the domestic relations court issued a Qualified Domestic Relations Order ("QDRO"). The QDRO was issued to effect the division of "the parties' respective interests in a certain retirement plan sponsored by S.I.I. Investments, Inc. in which [Mr. Ptacek] is the Participant." According to the terms of the QDRO, the administrator of the retirement plan was to transfer to the debtor "an amount equal to $150,000.00 of [Mr. Ptacek's] balance as of November 16, 2010." The QDRO stated that the lump sum payment of the $150,000 had to occur "as soon as administratively practicable after acceptance by

16

the Plan Administration of this Order as a QDRO." On or about February 3, 2011, S.I.I. Investments mailed a $150,000 check to the debtor pursuant to the terms of the QDRO. The debtor endorsed the check and gave it to Mr. Ptacek. Mr. Ptacek then deposited the check into a business bank account that he controlled. According to an affidavit submitted by Mr. Ptacek for summary judgment, the debtor returned the check "as payment for or reimbursement of significant amounts of money that [Mr. Ptacek] paid to [the debtor's] creditors" (Docket No. 40, Exhibit C).

Sometime in 2014, the relationship between the debtor and Mr. Ptacek deteriorated further. In June 2014, the debtor retained Robert Somogyi as her attorney to seek postjudgment relief in the divorce action. On August 8, 2014, in addition to the motions listed in the stipulated facts, attorney Somogyi filed a motion to set aside the parties' judgment entry of divorce dated June 19, 2008, pursuant to Section 3103.06 of the Ohio Revised Code, or, in the alternative, a motion for relief from the judgment entry for divorce pursuant to Ohio Civil Rule 60(b).

On February 23, 2015, the domestic relations court denied the debtor's motion for relief from judgment and motion to set aside the judgment entry of

17

divorce. On March 18, 2015, the debtor filed notices of appeal from the denial of her two motions.

On September 28, 2015, attorney Somogyi moved to withdraw from the divorce action, and the domestic relations court granted Somogyi's motion to withdraw on October 1, 2015. On October 5, 2015, the domestic relations court issued an agreed judgment entry, signed by the debtor, who was at that point proceeding *pro se*, stating that "all pending motions. . . are hereby dismissed with prejudice." On the same day, the debtor moved to dismiss her appeals.

On January 22, 2016, the debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code.

## CONCLUSIONS OF LAW

For ease of discussion, the Court will address the trustee's claims in the Amended Complaint in the following sequence:

1. The debtor's allegedly fraudulent transfer of her one-half interest in the Arizona property to Mr. Ptacek on September 15, 2015 (Counts I, II, and III of the Amended Complaint);

2. The debtor's allegedly fraudulent transfer of her $150,000 property settlement to Mr. Ptacek on or about February 14, 2011 (Count IV, ¶ 26b);

3. The $150,000 property settlement that Mr. Ptacek allegedly still owes the debtor (Count IV, ¶ 26b);

18

4. The spousal support obligation from the Ptaceks' divorce that Mr. Ptacek allegedly still owes the debtor (Count IV, ¶ 26c);

5. The $36,000 promissory note from 2009 that Mr. Ptacek allegedly still owes the debtor (Count IV, ¶ 26a); and

6. The trustee's claims against the debtor.

The Court will also provide further explanation for its denial of the trustee's requests to postpone the trial and to have the debtor apprehended and brought to the courthouse to testify.

## I. THE DEBTOR'S ALLEGEDLY FRAUDULENT TRANSFER OF HER ONE-HALF INTEREST IN THE ARIZONA PROPERTY TO MR. PTACEK ON SEPTEMBER 15, 2015 (COUNTS I, II, AND III OF THE AMENDED COMPLAINT)

In Count I, the trustee alleges that on or about September 15, 2015, the debtor fraudulently transferred to Mr. Ptacek her one-half interest in the Arizona property. The trustee seeks to set aside the alleged fraudulent transfer under both Section 548 of the Bankruptcy Code and Sections 1336.01 *et seq.* of the Ohio Revised Code, made applicable under Section 544(b) of the Bankruptcy Code. The trustee arguably asserts both actual and constructive fraudulent transfer claims with respect to the Arizona property. In Counts II and III, the trustee also seeks to set aside Mr. Ptacek's transfer on September 22, 2016, of the entire interest in the Arizona property to the LLC.

19

*Actual Fraudulent Transfer*

A bankruptcy trustee may assert fraudulent transfer claims based on either federal or state law. Section 548 of the Bankruptcy Code provides in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation incurred . . . by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> > (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted . . . .

11 U.S.C. § 548(a)(1)(A). A trustee seeking to avoid a transfer under Section 548 carries the burden of proof by a preponderance of the evidence. *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. App'x 337, 341 (6th Cir. 2006); *see also Grogan v. Garner*, 498 U.S. 279, 286 (1991) (preponderance of the evidence standard is presumed to be the standard applicable in civil actions). A trustee must satisfy three "core elements" to have an actual fraudulent transfer set aside under Section 548(a)(1)(A): (1) the transfer, (2) the timing, and (3) the intent. *Silagy v. Schroeder (In re Schroeder)*, Chapter 7 Case No. 14-62604, Adv. No. 16-6017, 2017 WL 598495, at *2 (Bankr. N.D. Ohio Feb. 14, 2017).

Section 544 of the Bankruptcy Code also allows the trustee to "avoid any transfer of an interest of the debtor in property . . . that is voidable under applicable

law by a creditor holding an unsecured claim that is allowable under section 502 of

[Title 11] . . . ." 11 U.S.C. § 544(b)(1).  This "strong-arm" provision of the

Bankruptcy Code "allows the trustee to 'step into the shoes' of a creditor in order

to nullify transfers voidable under state fraudulent conveyance acts for the benefit

of all creditors."  *Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 698 n.3

(6th Cir. 1999) (citing *NLRB v. Martin Arsham Sewing Co.*, 873 F.2d 884, 887

(6th Cir. 1989)).  Thus, the trustee also asserts that the debtor's transfer should be

set aside under Ohio's version of the Uniform Fraudulent Transfer Act.

Section 1336.04 of the Ohio Revised Code provides in pertinent part:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent
> as to a creditor, whether the claim of the creditor arose before, or
> within a reasonable time not to exceed four years after, the transfer
> was made or the obligation was incurred, if the debtor made the
> transfer or incurred the obligation . . .
>> (1) With actual intent to hinder, delay, or defraud any creditor
>> of the debtor . . . .

Ohio Rev. Code § 1336.04(A)(1).  Under Ohio's version of the Uniform

Fraudulent Transfer Act, a plaintiff can prove a fraudulent transfer by satisfying

three elements: "(1) a conveyance or incurring of a debt; (2) made with actual

intent to defraud, hinder, or delay; (3) present or future creditors."  *Nat'l Credit

Union Admin. Bd. v. Zovko*, No. 1:13 CV 1430, 2017 WL 4535070, at *7

(N.D. Ohio Jan. 27, 2017) (quoting *Blood v. Nofzinger*, 162 Ohio App.3d 545,

21

2005-Ohio-3859, 834 N.E.2d 358, ¶ 34 (6th Dist.)).

The federal and state fraudulent transfer statutes are "substantially similar both in terms of rights, remedies, and defenses." *Slone v. Lassiter (In re Grove-Merritt)*, 406 B.R. 778, 789 (Bankr. S.D. Ohio 2009) (citations omitted).

Arguably, Ohio's fraudulent transfer statute still requires a plaintiff to establish fraudulent intent by clear and convincing evidence, as opposed to the preponderance of the evidence standard under Section 548 of the Bankruptcy Code. *Compare Blood* at ¶ 36 ("the creditor seeking to set aside a transfer as fraudulent has the ultimate burden of proving, by clear and convincing evidence, the debtor's intent pursuant to R.C. 1336.04(A)(1)"), *and William D. Mundinger Tr. U/A 10/13/00 v. Zellers*, 473 B.R. 222, 233–34 (N.D. Ohio 2012) (following *Blood*), *with Kovacs v. Hanson (In re Hanson)*, 373 B.R. 522, 525 & n.1 (Bankr. N.D. Ohio 2007) (stating that preponderance of the evidence is the standard for fraudulent transfer actions brought under Ohio Rev. Code § 1336.04(A)(1), but recognizing contrary authority); *E. Sav. Bank v. Bucci*, 7th Dist. Mahoning No. 08 MA 28, 2008-Ohio-6363, ¶ 75 ("only preponderance of the evidence is required" to establish intent under Ohio Rev. Code § 1336.04(A)(1)). The Court finds that the trustee has failed to establish the debtor's fraudulent intent by even a preponderance of the evidence, thus the Court need not decide whether

22

the state law standard for proving fraudulent intent is clear and convincing evidence or preponderance of the evidence.

"Because proof of actual intent to hinder, delay or defraud creditors may rarely be established by direct evidence, courts infer fraudulent intent from the circumstances surrounding the transfer." *Schilling v. Heavrin (In re Triple S Rests., Inc.)*, 422 F.3d 405, 416 (6th Cir. 2005) (quoting *Zentek GBV Fund IV, LLC v. Vesper*, 19 Fed. App'x 238, 243 (6th Cir. 2001)). Thus, when determining whether the debtor possessed actual fraudulent intent, courts look for certain "badges of fraud," or "proof by a creditor of certain objective facts (for example, a transfer to a close relative, a secret transfer, a transfer of title without transfer of possession, or grossly inadequate consideration) [that] would raise a rebuttable presumption of actual fraudulent intent." *BFP v. Resolution Tr. Corp.*, 511 U.S. 531, 541 (1994). Ohio's version of the Uniform Fraudulent Transfer Act instructs courts to consider "all relevant factors" when determining fraudulent intent. *See* Ohio Rev. Code § 1336.04(B) (listing 11 non-exhaustive factors, including "before the transfer was made . . . the debtor had been sued or threatened with suit"). "Once a plaintiff establishes a sufficient number of badges of fraud, the burden shifts to the defendant to demonstrate that the debtor received a benefit or that there was some legitimate purpose for the transfer." *In re Grove-Merritt*,

23

406 B.R. at 794 (citing *Silagy v. Gagnon (In re Gabor)*, 280 B.R. 149, 157 (Bankr. N.D. Ohio 2002)).

Regarding the Arizona property, it is undisputed that the debtor transferred her one-half interest in the property to Mr. Ptacek by executing a special warranty deed on September 15, 2015. This transfer was then the subject of a judgment entry filed with the domestic relations court on October 2, 2015, which modified the separation agreement and permitted Mr. Ptacek to "retain the Arizona Property as his sole and separate property, free and clear of any claim of [the debtor]." Furthermore, this transfer occurred within the two-year period before the debtor filed her bankruptcy petition on January 22, 2016. Nevertheless, the trustee has failed to demonstrate that the debtor had the requisite fraudulent intent when she transferred her interest in the Arizona property on September 15, 2015.

The evidence at trial established that Mr. Ptacek has exercised considerable control over the debtor after their divorce and that he continues to do so even today. Mr. Ptacek maintains this control through money, which he has and she lacks, and through intimidation. Even without the debtor appearing at trial, there was substantial evidence of this intimidation and control. For example, Mr. Ptacek volunteered that the police had been called to their home probably 40 times during their rocky relationship. The process server who served the trial subpoena on the

24

debtor testified that he observed the debtor shaking, crying, and trembling after being served with the trial subpoena. Another witness testified that he saw Mr. Ptacek and several other men beat up the debtor's boyfriend at a party.

At the debtor's 341 examination, the trustee repeatedly asked the debtor to explain what happened between October 2014, when, with the help of her attorney, she stated under oath that Mr. Ptacek still owed her money from their divorce and a year later when, without an attorney, she dismissed all her postjudgment motions with prejudice and transferred her one-half interest in the Arizona property to Mr. Ptacek without getting any money in return.

> Trustee: You're telling me why you didn't pursue it. I don't want to know why you didn't pursue it.
>
> Debtor: I lost it.
>
> Trustee: I want to know whether he owes it to you or not?
>
> Debtor: No. He does not owe it to me.
>
> Trustee: Then tell me what your basis is for saying he does not owe it to you since you last filed that motion a year ago?
>
> Debtor: I think he supported me for the last 20 years.
>
> Trustee: What changed in the last year?
>
> Debtor: Peace between me and him, no fighting, yelling, screaming, just peace.
>
> Trustee: So you—

25

Debtor:  So I'm willing to give up the money that I thought that he owed me to just say screw it and live a peaceful life.  Yeah.  All the money in the world's not going to make a daughter and a father and mother not have a relationship.  It really isn't.  I was raised with nice things in life.  It's not worth it.  It's not worth your headache.  It's not worth—it's not worth it.  I honestly don't care.

341 Examination of Mellise Ptacek at 29–30.

Based on the record at trial, including the transcripts from the debtor's 341 examinations, when it comes to financial decisions, the debtor exercises little of her own will beyond self-preservation and a desire to protect her minor child.  The debtor also lacks financial sophistication.

Decisions such as the debtor's transfer of her one-half interest in the Arizona property to Mr. Ptacek in September 2015 were dictated or heavily-influenced by Mr. Ptacek.  Indeed, were the Court to accept as true the trustee's proffer of what the debtor would say under oath if forced to testify, that testimony would only reinforce the existing record that the debtor did not make this transfer with the intent to hinder, delay, or defraud her creditors.  Rather, the debtor made the transfer because Mr. Ptacek wanted to keep and refinance the Arizona property.  And, because the settlement agreement still in effect required the sale of the Arizona property and for Mr. Ptaceck to share with the debtor any net proceeds after expenses he paid, the settlement agreement was modified at the same time.

26

This transfer was not about the debtor's creditors, but Mr. Ptacek's own financial interests and wishes. And because Mr. Ptacek had the ability to make the debtor's life difficult and to control her actions through money and intimidation, the debtor went along with his requests. While the Court acknowledges that there is nothing mutually exclusive about a debtor having a controlling and intimidating ex-spouse *and* an intent to hinder, delay, or defraud her own creditors, the evidence in this proceeding simply does not support the latter conclusion.

At trial, the trustee presented evidence of a few badges of fraud, including that the transfer was made to the debtor's ex-husband, an "insider" as that term is defined by Sections 101(31) and (45) of the Bankruptcy Code, and that the debtor was likely insolvent when the transfer was made. But the evidence presented at trial also showed that on December 28, 2015, Mr. Ptacek refinanced the Arizona property by executing a deed of trust with The Huntington National Bank. Mr. Ptacek still owed a balance of $274,000 on the property at the time the refinancing occurred. The Court finds it just as likely, if not more likely, that the transfer was completed to assist Mr. Ptacek with keeping and refinancing the Arizona property. Furthermore, the transfer occurred before attorney Somogyi sued the debtor for unpaid attorney's fees.

Another badge of fraud or relevant factor in Ohio Revised Code

Section 1336.04(B) is "[w]hether the value of the consideration received by the

debtor was reasonably equivalent to the value of the asset transferred . . . ."  At the

time the debtor transferred her one-half interest in the Arizona property to

Mr. Ptacek in September 2015, the debtor's one-half interest was subject to a

$274,000 deed of trust as well as the terms of the separation agreement and divorce

decree.  Under the terms of the divorce, the debtor's one-half interest in the

Arizona property was subject to the payments that Mr. Ptacek made for "the

primary mortgage, taxes, insurance, utilities and all other repairs associated with

said real estate" after March 13, 2008, until the property was sold.  Stipulation

No. 7.   Under the terms of the divorce, the debtor's own liability regarding the

expenses associated with the Arizona property was limited to her share of the net

proceeds.  *Id.*  The record establishes, and the trustee does not dispute, that when

these expenses are factored into the debtor's one-half interest in the Arizona

property, there was no net value or equity in the debtor's one-half interest.  The

mortgage, taxes, and insurance expenses are themselves enough to eliminate any

potential equity or value that the debtor might have had in the Arizona property as

of September 2015 (Ptacek Exhibit O).  In short, because the debtor's one-half

interest in the Arizona property was subject to the terms of the separation

28

agreement and divorce decree, the debtor gave up nothing of value when she transferred this interest to Mr. Ptacek in September 2015.

While the trustee maintains that Mr. Ptacek was obligated to market and sell the Arizona property in 2009, the original separation agreement and divorce decree contained no time limit for the sale of the Arizona property. Until a sale of the property, the debtor's one-half interest continued to remain subject to the expenses associated with the Arizona property. The debtor and Mr. Ptacek both used the Arizona property after it was taken off the market in 2010, but Mr. Ptacek alone paid all the expenses as required under the separation agreement. The trustee has not attempted to demonstrate that, when these expenses are factored in, there was any net value or equity in the debtor's one-half interest in the Arizona property at any time between 2008 and 2015.

The October 2, 2015, stipulated judgment entry modified the separation agreement by permitting Mr. Ptacek to "retain the Arizona property as his sole and separate property, free and clear of any claim of" the debtor. The entry also instructed the debtor to execute a quit claim deed conveying all of her interest in the property no later than 7 days after the entry was entered, although the debtor had already conveyed her one-half interest on September 15, 2015. Finally, the judgment entry indicated that the domestic relations court found "that the parties'

29

Agreement is fair, just and equitable." However, these findings by the domestic relations court have no issue preclusive effect regarding the trustee's fraudulent transfer claim against Mr. Ptacek in this proceeding. *In re Fordu*, 201 F.3d at 704 (citing *Gargallo v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 918 F.2d 658, 663 n.6 (6th Cir. 1990)) (statement in divorce decree that distribution was fair and equitable not entitled to issue preclusive effect in bankruptcy trustee's fraudulent transfer claim).

Accordingly, after considering all the evidence and all relevant factors, the Court finds that the trustee has failed to demonstrate by a preponderance of the evidence that the debtor made this transfer with the "actual intent to hinder, delay, or defraud" her creditors, under either the Bankruptcy Code or Ohio's version of the Uniform Fraudulent Transfer Act.

### Constructive Fraudulent Transfer

The trustee also arguably asserts constructive fraudulent claims with respect to the debtor's transfer of her one-half interest in the Arizona property. Section 548 of the Bankruptcy Code provides, in pertinent part:

> (a)(1) The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation incurred . . . by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
> 
> . . . .

30

(B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;

> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital;
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured; or
>
> (IV) made such transfer to or for the benefit of an insider, or incurred such obligation to or for the benefit of an insider, under an employment contract and not in the ordinary course of business. . . .

11 U.S.C. § 548(a)(1). Section 1336.04 of the Ohio Revised Code also provides,

in pertinent part:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation . . .
>
> . . . .
>
> (2) Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and if either of the following applies:
>
> > (a) The debtor was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction;
> >
> > (b) The debtor intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due. . . .

31

Ohio Rev. Code § 1336.04(A)(2). While the Bankruptcy Code does not define "reasonably equivalent value," the Code defines "value" for the purpose of determining a fraudulent transfer as "property, or satisfaction or securing of a present or antecedent debt of the debtor . . . ." 11 U.S.C. § 548(d)(2)(A); *see also In re Grove-Merritt*, 406 B.R. at 805. Accordingly, "[i]n determining whether a transfer is supported by reasonably equivalent value, courts generally compare the value of property transferred with that which is received in exchange for the transfer." *Id.* (citing *In re Fordu*, 201 F.3d at 707; *Rieser v. Hayslip (In re Canyon Sys. Corp.)*, 343 B.R. 615, 639 (Bankr. S.D. Ohio 2006)). The reasonableness of consideration supporting a transfer is evaluated from the standpoint of the debtor. *Id.* (citing *Aristocrat Lakewood Nursing Home v. Mayne*, 133 Ohio App.3d 651, 665, 729 N.E.2d 768 (8th Dist.1999)). The trustee has the burden of proving that the debtor received less than reasonably equivalent value in exchange for her transfer by a preponderance of the evidence. *Simon v. Short (In re Oakland Physicians Med. Ctr., LLC)*, 596 B.R. 587, 610 (Bankr. E.D. Mich. 2019).

According to a loan application submitted by Mr. Ptacek to Huntington Bank in October 2015, the value of the Arizona property was estimated to be $400,000. At the same time, according to the deed of trust executed by Mr. Ptacek to refinance the Arizona property in December 2015, the property was encumbered

by a mortgage of approximately $274,000. As noted earlier, the debtor's interest was also subject to the terms of the separation agreement, which stated that Mr. Ptacek was to be reimbursed for certain expenses—such as mortgage payments, taxes, utilities, and insurance—before the debtor was to recover any net proceeds.

At trial, Mr. Ptacek presented a summary of payments made for the Arizona property from 2008, the year when the parties entered into the separation agreement, through 2015, the year when the debtor transferred her one-half interest. The summary shows that during that time period, Mr. Ptacek paid over $193,000 to maintain the property. Accordingly, the Court finds that there would be no equity left for the debtor to receive at the time she transferred her interest.

At trial, the trustee suggested Mr. Ptacek failed to effectively market the property for sale during the term of the real estate broker contract and argued that Mr. Ptacek should have sold the property in 2010. But the trustee has failed to show that there would have been any net recovery for the debtor had the property been sold in 2010. Thus, the trustee has failed to demonstrate that the transfer of the debtor's one-half interest in the property was either an actual or constructive fraudulent transfer under federal or state law.

33

*Trustee's Failure to Establish a Claim Against the LLC*

Because the Court finds that the trustee has failed to establish by a preponderance of the evidence that the debtor fraudulently transferred her one-half interest in the Arizona property to Mr. Ptacek in 2015, the Court need not address any claims regarding Mr. Ptacek's transfer of the Arizona property to the LLC in 2016. Whether Mr. Ptacek transferred the Arizona property to a separate LLC with an intent to hinder, delay, or defraud his own creditors is irrelevant. If the trustee cannot establish a fraudulent transfer claim against Mr. Ptacek under Sections 544 or 548, then the trustee has no claim against the LLC as a transferee under Section 550. Rather, Section 550(a) only permits recovery from a transferee "to the extent that a transfer is avoided under section 544, 545, 547, 548, 549, 553(b) or 724(a) of this title." Accordingly, the Court finds that the trustee has also failed to establish a claim against the LLC.

## II. THE DEBTOR'S ALLEGEDLY FRAUDULENT TRANSFER OF HER $150,000 PROPERTY SETTLEMENT TO MR. PTACEK ON OR ABOUT FEBRUARY 14, 2011 (COUNT IV, ¶ 26B)

The trustee seeks to set aside the debtor's transfer of a $150,000 check to Mr. Ptacek as a fraudulent transfer. On February 14, 2011, the debtor received a $150,000 check as satisfaction for the property settlement Mr. Ptacek owed her under the terms of the separation agreement. But after endorsing the instrument,

34

the debtor signed the $150,000 check back to Mr. Ptacek, who then deposited it into a bank account that he controlled.  As with the debtor's transfer of her one-half interest in the Arizona property, the trustee arguably asserts both actual and constructive fraudulent transfer claims with respect to the $150,000 check.

Mr. Ptacek asserts that the trustee's fraudulent transfer claim with respect to the $150,000 check is time-barred, whether it is brought under Section 548 of the Bankruptcy Code or under Sections 1336.01 *et seq.* of the Ohio Revised Code, made applicable under Section 544(b) of the Bankruptcy Code.  Indeed, the trustee seems to have conceded this issue in his response to Mr. Ptacek's and the LLC's motion for summary judgment (Docket No. 44).  Rather, the trustee maintains that, in addition to alleging a fraudulent transfer claim, his amended complaint also alleges that Mr. Ptacek still owes the debtor's estate $150,000 because the property settlement was never paid.  To the extent that the trustee still asserts that his fraudulent transfer claim for the $150,000 payment is timely-filed, the Court will address that issue below.

Section 548 of the Bankruptcy Code allows the trustee to "avoid any transfer . . . of an interest of the debtor in property . . . that was made or incurred on or *within 2 years* before the date of the filing of the petition . . . ."  11 U.S.C. § 548(a)(1) (emphasis added).  The evidence presented at trial shows that the check

35

was negotiated by the debtor in 2011, almost five years before the debtor filed for bankruptcy on January 22, 2016. Thus, regardless of whether the trustee is asserting an actual fraudulent transfer claim under Section 548(a)(1)(A) or a constructive fraudulent transfer claim under Section 548(a)(1)(B), the trustee's claim is time-barred.

The trustee also seeks to set aside the transfer under Ohio's version of the Uniform Fraudulent Transfer Act. Section 1336.09 of the Ohio Revised Code states that an action may be brought under Section 1336.04(A)(1) either "within *four years* after the transfer was made or the obligation was incurred or, if later, within *one year* after the transfer or obligation was or reasonably could have been discovered by the claimant." Ohio Rev. Code § 1336.09 (emphasis added). Thus, Ohio's version of the Uniform Fraudulent Transfer Act contemplates "constructive discovery" by permitting actions to be brought outside the four-year period only if they are brought "within one year after the transfer . . . was or reasonably could have been discovered . . . ." Ohio Rev. Code § 1336.09; *see Bash v. Textron Fin. Corp. (In re Fair Finance Co.)*, 834 F.3d 651, 674 (6th Cir. 2016) ("[Ohio Rev. Code] § 1336.09(A)'s discovery rule begins to run at the point when a plaintiff discovers or, in the exercise of reasonable care, could have discovered the transfer and its fraudulent nature"); *see also James v. McCoy*, 56 F. Supp. 2d 919, 930

36

(S.D. Ohio 1998) (claimant barred from recovery because he failed to bring his claim within one year of discovery as required under Section 1336.09(A)), *aff'd* 181 F.3d 101 (6th Cir. 1999); *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 247–48, 743 N.E.2d 484 (7th Dist.2000).

Since the transfer of the $150,000 occurred more than four years before the debtor filed for bankruptcy, the trustee must demonstrate that the action was brought within one year of the date that the fraudulent transfer was or reasonably could have been discovered. The evidence presented at trial shows that the debtor's attorney in the domestic relations action was made aware of the fraudulent transfer of the $150,000 no later than October 24, 2014. On that date, Mr. Ptacek filed a motion to dismiss the debtor's motion to set aside the judgment entry of divorce in the domestic relations court. Mr. Ptacek's motion included a scanned image of the check that was sent to the debtor by S.I.I. Investments, Inc., pursuant to the terms of the 2011 QDRO (Ptacek Exhibit K). Since attorney Somogyi, a creditor of the debtor, discovered or, in the exercise of reasonable care, could have discovered the allegedly fraudulent transfer more than a year before the debtor filed for bankruptcy on January 22, 2016, the trustee's claim is also time-barred under the one-year discovery period of Ohio Revised Code Section 1336.09. In addition, the extension of time provided under 11 U.S.C. § 108 after a bankruptcy

37

case is filed does not help the trustee because the relevant time period expired before the date of the filing of the petition.

### III. THE $150,000 PROPERTY SETTLEMENT THAT MR. PTACEK ALLEGEDLY STILL OWES THE DEBTOR (COUNT IV, ¶ 26B)

As noted above, the trustee maintains that his amended complaint should also be construed as alleging that Mr. Ptacek still owes the debtor's estate $150,000 because the property settlement was never paid. Mr. Ptacek asserts in response that he paid the property settlement and that such payment was expressly acknowledged by the debtor and by the domestic relations court.

In a recent decision by the United States Supreme Court, Justice Kagan observed that, absent the trustee's avoidance powers under Chapter 5 of the Bankruptcy Code, the debtor's estate is no larger or smaller than what assets the debtor has under applicable state law. *See Mission Prod. Holdings v. Tempnology, LLC*, 139 S. Ct. 1652, 1663 (2019) ("Section 365 [of the Bankruptcy Code] reflects a general bankruptcy rule: The estate cannot possess anything more than the debtor itself did outside bankruptcy. . . . As one bankruptcy scholar has put the point: . . . [']A debtor's property does not shrink by happenstance of bankruptcy, but it does not expand, either.' ") (citations omitted); *see also In re Fair Finance*, 834 F.3d at 676 (trustee stands in the shoes of the debtor, and defenses can be raised against

38

a bankruptcy trustee to the same extent they could have been raised against the debtor prior to the filing of bankruptcy). If the debtor had no right of recovery under state law, the trustee has no greater right on behalf of the debtor's bankruptcy estate.

In this proceeding, any rights that the trustee might have to the property settlement payment are based on whatever rights the debtor had to certain funds under the QDRO. It is undisputed that a $150,000 check was mailed from S.I.I. Investments, Inc. to the debtor pursuant to the terms of the QDRO and that the debtor endorsed the check and gave it to Mr. Ptacek. Mr. Ptacek complied with the literal requirements of the QDRO by sending the check to the debtor—what the debtor chose to do with the check after receiving it was up to her. If the trustee believed that this arrangement was improper or unfair, it was incumbent on the trustee to seek modification of the orders of the domestic relations court from the domestic relations court. *See Celotex v. Edwards,* 514 U.S. 300, 313 (1995) ("it is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected") (citations omitted); *see also In re White*, 851 F.2d 170, 173 (6th Cir. 1988) (state law defines a debtor's interest in property and suggesting that bankruptcy court cannot review

39

or reject state court's allocation of marital estate). This Court does not stand in review of the decisions of the state court. Thus, the trustee has failed to demonstrate that the debtor did not actually receive payment of the $150,000 property settlement pursuant to the terms of the QDRO.

## IV. THE SPOUSAL SUPPORT OBLIGATION FROM THE PTACEK'S DIVORCE THAT MR. PTACEK ALLEGEDLY STILL OWES THE DEBTOR (COUNT IV, ¶ 26C)

The separation agreement executed on May 15, 2008, required that Mr. Ptacek pay the debtor 36 monthly payments of $2,040, for a total of $72,000 in spousal support (including a 2% processing fee). As indicated previously, the CSEA's website includes a record of payments made between June 2008 and December 2009 that total half of the spousal support obligation. But on November 16, 2009, an agreed judgment entry was issued by the domestic relations court acknowledging satisfaction of the entire spousal support obligation owed to the debtor.

As noted earlier, if the debtor has no right of recovery under state law, the trustee has no greater right on behalf of the debtor's bankruptcy estate. *See Tempnology,* 139 S. Ct. at 1663; *In re Fair Finance*, 834 F.3d at 676. Nor does this Court stand in review of the state court's determination.

40

The Ohio Supreme Court has stated that a judgment entered by consent is "as effective as if the merits had been litigated." *Gilbraith v. Hixson* (*In re Gilbraith*), 32 Ohio St. 3d 127, 129, 512 N.E.2d 956 (1987) (citing *Sponseller v. Sponseller*, 110 Ohio St. 395, 399, 114 N.E. 48 (1924)); *see also Ohio Pyro, Inc. v. Ohio Dep't of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 24. Consequently, if the remaining elements of claim preclusion are met, the Ohio Supreme Court has held that claim preclusive effect must generally apply to an agreed judgment entry. *In re Gilbraith*, 32 Ohio St.3d at 129 (citing *Horne v. Woolever*, 170 Ohio St. 178, 182, 163 N.E.2d 378 (1959)) (explaining that "as a general rule, a consent judgment operates as *res judicata* with the same force given to a judgment entered on the merits in a fully adversarial proceeding.").

"Under Ohio law, the doctrine of res judicata consists of the two related concepts of claim preclusion, also known as res judicata, and issue preclusion, also known as collateral estoppel." *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011) (internal quotation marks and citations omitted). Claim preclusion bars later actions by the same parties or their privies that arise out of a transaction that was the subject of a previous action. *Id.* Issue preclusion prevents the same parties or their privies from relitigating facts and issues in a later suit that were fully litigated in a prior suit. *See In re Fordu*, 201 F.3d at 704. Unlike issue

41

preclusion, the doctrine of claim preclusion forbids relitigation of claims actually litigated and claims that could have been litigated in the previous suit. *Boggs*, 655 F.3d at 519.

Both claim and issue preclusion apply with full force to bankruptcy proceedings and "the values underlying the doctrine[s]—judicial economy and prevention of inconsistent decisions—are particularly served by applying it to Chapter 7 bankruptcy proceedings." *Trs. of Operating Eng'rs Local 324 Pension Fund v. Bourdow Contracting, Inc.*, 919 F.3d 368, 381 (6th Cir. 2019). Under the full faith and credit statute, 28 U.S.C. § 1738, a federal court must give "a state court judgment the same preclusive effect that the judgment would have in a state court." *In re Fordu*, 201 F.3d at 703 (citing *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 384 (1985)).

In interpreting the claim preclusion doctrine, Ohio has adopted the modern application as stated in the Restatement (Second) of Judgments §§ 24 and 25. *Goodwin v. Summit Cty.*, 703 F. App'x 379, 385 (6th Cir. 2017) (citing *Grava v. Parman Township*, 73 Ohio St.3d 379, 382 (Ohio 1995)). Claim preclusion applies when the following four elements are met:

> (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; and (4) a second action

42

arising out of the transaction or occurrence that was the subject matter
of the previous action.

*Basista Holdings, LLC v. Ellsworth Twp.*, 710 F. App'x 688, 695 (6th Cir. 2017)

(quoting *Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997)).

Because the domestic relations court has determined in a valid order that

Mr. Ptacek's spousal support obligation has been satisfied, that decision has claim

preclusive effect regarding a second action by a trustee standing in the shoes of the

debtor raising the same claim in this proceeding. Again, if the trustee believed that

the domestic relations court's determination was improper or unfair, it was

incumbent on the trustee to seek modification of that decision from the domestic

relations court. Accordingly, the agreed judgment entry, which acknowledged that

Mr. Ptacek fully satisfied the spousal support obligation, bars the trustee's claim

for unpaid spousal support in this proceeding.

Moreover, were the trustee to recover unpaid spousal support from

Mr. Ptacek, any such recovery might well be exempt under Ohio Revised Code

Section 2329.66(11), which exempts a "person's right to receive spousal

support . . . to the extent reasonably necessary for the support of the person or any

of the person's dependents." Even though the debtor has not listed this claim as an

asset in her bankruptcy schedules and has not claimed an exemption for this asset

on Schedule C, the debtor has a general right to amend her schedules under

43

Bankruptcy Rule 1009. *See Law v. Siegel*, 134 S. Ct. 1188, 1197 (2014) ("federal law provides no authority for bankruptcy courts to deny an exemption on a ground not specified in the [Bankruptcy] Code").

Given the state court's determination that this spousal support obligation has been satisfied, and no action by the trustee to have that state court modify its own determination, this bankruptcy court must respect the judgment of the state court. Accordingly, the Court finds that the trustee has failed to meet his burden as to the claim for unpaid spousal support.

## V. THE $36,000 PROMISSORY NOTE FROM 2009 THAT MR. PTACEK ALLEGEDLY STILL OWES THE DEBTOR (COUNT IV, ¶ 26A)

The trustee claims that Mr. Ptacek has not satisfied the $36,000 promissory note that Mr. Ptacek executed in favor of the debtor on November 16, 2009, the same day that the agreed judgment entry was entered by the domestic relations court. Mr. Ptacek admitted that he executed the promissory note, but asserted that he had paid the note in full. The Court does not find this testimony credible. Instead, the Court finds that the most likely scenario was that Mr. Ptacek did not want to disclose an ongoing $36,000 obligation for spousal support when he was seeking a new mortgage on his real property in Strongsville, Ohio, and was looking to refinance the debt secured by the Arizona property. Mr. Ptacek therefore

44

persuaded the debtor to accept a promissory note as essentially a prepayment of his remaining spousal support obligation in exchange for an agreed judgment entry that the spousal support obligation was paid in full. Indeed, the spousal support payment history maintained by the CSEA is consistent with the promissory note amount, and that note bears the same date that the Ptaceks signed an agreed judgment entry that the spousal support obligation was paid in full.

The Court finds no credible evidence of payments made against the promissory note, such as cancelled checks. The Court also does not find credible Mr. Ptacek's testimony that he paid the debtor $91,000 against the promissory note. Moreover, Mr. Ptacek's trial testimony was contradicted by statements in his earlier affidavit that he voluntarily paid a significant number of the debtor's bills and expenses and that he was not legally obligated to pay to establish goodwill for their daughter (Docket No. 40, Exhibit C, ¶¶ 24–27). The Court acknowledges that, in all likelihood, Mr. Ptacek has voluntarily provided and continues to provide financial support to the debtor, such as the use of a car after the debtor's own car was repossessed or paying her credit card expenses, and that this financial support may well exceed the amount due under the $36,000 promissory note. But as Mr. Ptacek stated previously in an affidavit, he "had no legal obligation to pay" the financial support he voluntarily extended to the debtor. *Id.* at ¶ 26. Because

45

Mr. Ptacek failed to provide evidence of periodic or lump sum payments against the note, the Court finds that this obligation remains unpaid. Nor is there credible evidence that the debtor agreed to forgive this indebtedness, cancel the note, or accept payment of other expenses in lieu of Mr. Ptacek's obligation under the note. *Cf. Wilhelmy v. 15201 Detroit Corp.*, 8th Dist. Cuyahoga No. 71290, 1997 WL 298052, *4 (June 5, 1997) (evidence supported oral modification of note when creditor accepted family members' payment of rent and other expenses in lieu of payment on the note).

Nor does the Court believe that the trustee's action based on the $36,000 note is barred either by (1) the domestic relations court's order dated November 16, 2009, that the spousal support obligation had been satisfied or (2) the domestic relations court's order dated October 5, 2015, dismissing with prejudice the debtor's postjudgment motions seeking, among other relief, recovery on the $36,000 note. As to the 2009 order, the debtor's right to payment under the note essentially replaced the debtor's right to receive spousal support under the separation agreement. The spousal support obligation was extinguished by the agreed judgment entry dated November 16, 2009, but the right to be paid under the $36,000 note came into existence the very same day. As such, a determination that

46

spousal support obligation had ceased has no effect on the new obligation under the $36,000 note.

As to the order dated October 5, 2015, a dismissal with prejudice may have claim preclusive effect on the same claims filed in other courts, but not always. *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 503 (2001) ("it is no longer true that a judgment 'on the merits' is necessarily a judgment entitled to claim-preclusive effect"); *accord Wheeler v. Dayton Police Dep't*, 807 F.3d 764, 766 (6th Cir. 2015) ("dismissals with prejudice generally are judgments on the merits that bar plaintiffs from refiling their claims in the court that dismissed them" (citing *Semtek*, 531 U.S. at 505–06)). While the order may have barred the debtor from refiling claims for postjudgment relief before the domestic relations court, nothing in that order appears to bar the debtor from bringing a separate action in a court of general jurisdiction for money due under the $36,000 note. In addition, Mr. Ptacek does not appear to have raised this specific defense in his answer or otherwise. *See* Civil Rule 8(c) (res judicata is an affirmative defense that must be stated in an answer; made applicable to this proceeding under Bankruptcy Rule 7008). Rather, Mr. Ptacek simply argued that he satisfied the $36,000 note through his general support of the debtor over the intervening years.

47

Therefore, the Court finds that the trustee has established by a preponderance of the evidence that Mr. Ptacek owes the debtor's estate the entire amount due under the $36,000 promissory note.

*Interest on the Promissory Note*

The trustee also seeks interest on the $36,000 promissory note. The promissory note carries zero interest unless the payment obligation is declared to be in default. According to the note, if default is declared, interest runs on the unpaid balance at eighteen percent per year.

Nothing in the record indicates that the debtor ever declared a default under the terms of the note. Although the debtor did seek relief from judgment in the domestic relations court in August 2014, that motion addressed whether the underlying spousal support obligation remained unpaid, but made only a general reference to "a document/note" that Mr. Ptacek signed "indicating that he would pay said obligation" (Trustee Exhibit 6 at 3). Accordingly, the trustee has failed to establish by a preponderance of the evidence that such a notice of default occurred any time prior to the adversary proceeding being filed on August 17, 2017. Instead, the Court will count as a declaration of default the summons and adversary complaint served on Mr. Ptacek in this proceeding on August 22, 2017, which specifically mentioned indebtedness based on the promissory note.

48

Eighteen percent interest on a $36,000 promissory note amounts to $6,480 per year, or $17.7534 per day based on a 365-day year. Interest from August 22, 2017, through the date of this decision, August 27, 2019, is $13,048.77, resulting in a total judgment of $49,048.77. Postjudgment interest on the entire judgment of $49,048.77 will accrue at the rate provided under 28 U.S.C. § 1961.

## VI. TRUSTEE'S CLAIMS AGAINST THE DEBTOR

Although the trustee named the debtor as a defendant in the amended complaint, the trustee has not asserted any specific claims against the debtor. Nor has the trustee sought an entry of default or moved for a default judgment despite the debtor's failure to appear or otherwise respond. Nor did the trustee indicate at trial that he was seeking anything from the debtor other than for her to appear and testify. Since the trustee has failed to establish any claims against the debtor at trial or otherwise, the Court enters judgment against the trustee and in favor of the debtor on whatever claims may exist against the debtor in the amended complaint.

## VII. DEBTOR'S FAILURE TO APPEAR AT TRIAL

Should the trustee assert on appeal that the Court erred or abused its discretion in declining to stay the trial until the debtor could be apprehended and brought to a courthouse to testify at some future date, the Court offers the following more detailed explanation of its decision.

49

Under Rule 611 of the Federal Rules of Evidence, the Court has discretion

over the mode and order of examining witnesses and presenting evidence.  Fed. R.

Evid. 611(a).  In addition, Bankruptcy Rule 2005 expressly authorizes, but does

not mandate, the apprehension and removal of a debtor to compel attendance of for

examination.  Bankruptcy Rule 2005(a) provides:

> On motion of any party in interest supported by an affidavit alleging
> . . . (3) that the debtor has willfully disobeyed a subpoena or order to
> attend for examination, duly served, *the court may* issue to the
> marshal, or some other officer authorized by law, an order directing
> the officer to bring the debtor before the court without unnecessary
> delay. If, after hearing, the court finds the allegations to be true, the
> court shall thereupon cause the debtor to be examined forthwith. If
> necessary, the court shall fix conditions for further examination and
> for the debtor's obedience to all orders made in reference thereto.

(emphasis added).  In addition, Rule 45(g) of the Federal Rules of Civil Procedure,

made applicable to this proceeding under Bankruptcy Rule 9016, provides:

> **(g) Contempt.** *The court* for the district where compliance is required
> . . . *may* hold in contempt a person who, having been served, fails
> without adequate excuse to obey the subpoena or an order related to it.

(emphasis added).  Both provisions use the permissive term "may."  *See* Federal

Rule of Evidence 804(a)(5) (contemplating situations where witness is absent from

trial and proponent has been unable, by process or other reasonable means, to

procure the declarant's attendance); *In re Dixon*, 528 B.R. 710, 720 (Bankr. E.D.

Mich. 2015) (sanctions under the bankruptcy court's civil contempt powers are

50

permissive and discretionary, not mandatory); *see also* 28 U.S.C. § 1826 (trial

court "may" order confinement of recalcitrant witness); *Coffelt v. United States*,

856 F.2d 193 (6th Cir. 1988) (unpublished) ("The permissive language of

[28 U.S.C. § 1826] leaves to the reasonable discretion of the trial court the grant or

denial of a contempt motion.").

The trustee made the following proffer of what the debtor would testify were

she apprehended and forced to testify: (1) the debtor regularly felt threatened and

intimidated by Mr. Ptacek; (2) Mr. Ptacek threatened that the debtor would no

longer have visitation rights with their daughter; (3) Mr. Ptacek engaged in

violence against both the debtor and the debtor's boyfriend; (4) the Ptaceks

continued to live together after their divorce and tried to cancel the divorce; (5) the

money Mr. Ptacek spent toward the debtor was just for ordinary living expenses

and not to satisfy any legal obligations; (6) the debtor never agreed that the

Arizona property should not be sold; (7) Mr. Ptacek convinced the debtor to sign a

judgment entry that her transfer of her one-half interest in the Arizona property

was for fair and reasonable value; (8) the $36,000 note was in lieu of $36,000 in

outstanding spousal support due the debtor, which she accepted in exchange for her

signing an agreed judgment entry that Mr. Ptacek' spousal support obligation had

been satisfied; (9) the debtor turned down a settlement proposal negotiated by

51

attorney Somogyi and then signed a number of stipulations without the benefit of her own attorney; and (10) the debtor never received the $150,000 property settlement provided for under the divorce decree, the $36,000 balance due as spousal support, or the $36,000 due under the promissory note.

A number of factors figured into the Court's decision not to suspend the trial and order the apprehension of the debtor, including:

- this is not a criminal proceeding in which Sixth Amendment rights of confrontation and compulsory process are implicated;

- the debtor's proffered testimony would be cumulative of evidence already in the record, particularly items 1, 3, 5, 6, 8, and 10 described above; *see Hopkins v. Britton*, 742 F.2d 1308, 1311 (11th Cir. 1984) (trial court did not abuse its discretion in refusing to delay hearing until missing witnesses could be located, and appellant made no showing of how the witnesses' testimony would be other than cumulative); indeed, were the Court to accept as true the trustee's proffer of what the debtor would say under oath if forced to testify, that testimony would only reinforce the existing record that the debtor did not transfer her one-half interest in the Arizona property with the intent to hinder, delay, or defraud her creditors;

52

- the proffered testimony (items 1-10) would not affect the trustee's claims for relief; for example, to the extent such claims are time-barred or are inconsistent with the debtor's rights as determined by the domestic relations court, the outcome would be the same;

- both the trustee and attorney Somogyi examined the debtor under oath over two different days, with written transcripts totaling more than one hundred pages, and the trustee elected not to take the Court up on its offer to have a deputy U.S. Marshal serve the debtor with a deposition subpoena, which would have been less disruptive than suspending the trial;

- the Court did not wish for the debtor to undergo the trauma of being apprehended and forced to testify in a civil proceeding and subject to additional psychological abuse and possible physical abuse; one of the trustee's witnesses testified that the debtor was visibly upset just from being served with a trial subpoena, and the debtor had already had her discharge denied for failing to return for a continued 341 examination;

- little in the trustee's proffer focused on the debtor's intent to hinder, delay, or defraud her creditors; rather, most of the proffer concerned Mr. Ptacek's efforts to keep the debtor financially dependent on him and to manipulate

53

and take advantage of the debtor's lack of sophistication and the relative power imbalance;

- the debtor already had given inconsistent testimony under oath, raising credibility questions over whatever new testimony the debtor might provide if she were apprehended and forced to testify under penalty of further contempt; and

- this a not a case where the debtor herself is believed to be hiding a valuable asset, *cf. In re Kenny G. Enterprises, LLC*, 727 F. App'x 455 (9th Cir. 2018) (affirming continued incarceration, now in excess of four years, as civil contempt sanction where individual failed to explain what happened to $1.4 million transferred from debtor's estate).

In other words, the Court did not believe that staying the trial and ordering the apprehension of the debtor would have affected the outcome of this proceeding or served the interests of justice. As the Court previously noted on the record, to the extent that the trustee believes there has been a conspiracy to obstruct justice, witness tampering, or some other criminal conduct, the appropriate step is to make a criminal referral to the United States Attorney under 18 U.S.C. § 3057. This Court has no authority to hear or punish criminal conduct.

54

CONCLUSION

For the reasons stated above, the Court enters judgment in favor of the trustee and against the debtor's ex-husband, James Ptacek, in the amount of $49,048.77 and denies all other claims in the trustee's amended adversary complaint.

IT IS SO ORDERED.

55